No. 357

First Circuit

———

GREIG v. COMEAU

———

(December 4, 1928.   Opinion and Decree.)

———

J. Hugo Dore, of Ville Platte, and W. G. Perrault, of Opelousas, attorneys for plaintiff, appellant.

W. A. Robertson, of Opelousas, attorney for defendant, appellee.

ELLIOTT, J.   George Greig instituted suit against Mrs. E. B. Comeau for $799.16 with interest as balance due him on an open account.   His allegation is, that for a period extending through many years he sold and delivered to her certain goods, wares and merchandise, acting for her separate account and benefit individually and through her husband, C. H. Comeau, managing her separate paraphernal property as her agent, and through Gaston Hardy, her overseer and superintendent of her plantation, Catalpa Square, situated in the Parish of St. Martin, for the improvement, upkeep and cultivation of the same.

The plaintiff alleges that at the end of each year she individually or through her husband or overseer would settle for the current year's advances and strike a balance of account.   That the statement of the said balance of account was duly furnished Mrs. Comeau.   The statement of account sued on commencing with the balance of $911.22 brought forward from the previous year, is annexed to and made part of his petition.

The defendant obtained an order requiring the plaintiff to show the items which made up the balance brought over in the account.

In response plaintiff produced two statements of account, calling them in his return, the documents which he was required to produce, stating in his return that the basis of his suit was an acknowledged account produced to the Court.   The return was not a compliance with what he had been directed to produce.   One of the statements commences with a balance of $2772.69 on December 31, 1922, not itemized, the correctness of which purports to have been acknowledged by defendant's husband, C. H. Comeau.   The other commences with a balance of $1396.05 on December 1, 1923, and the balance brought over is not itemized and does not purport to have been acknowledged by anybody. Neither of them was acknowledged by Mrs. Comeau, the defendant.

The defendant objected to plaintiff's non-compliance with the order, but the objection does not seem to have been acted on.

The defendant filed an answer in which she denies the indebtedness alleged against her. She alleges that she had no dealings with the plaintiff except isolated purchases pursuant to written orders, all of which had been paid for by her. That she had never dealt with plaintiff through a third party, and had never authorized him to charge to her merchandise ordered or supplied to her husband or her overseer or any other person. That she had been judicially separated in property from her husband for twenty-seven years and that during all that time, over which plaintiff's pretended account runs, she individually administered her separate estate for her separate account and nobody had authority to contract debts, purchase supplies for her plantation, or execute acknowledgment of debts due by her. She denied that she had authorized the purchase of the goods charged against her by the plaintiff. That the plantation in question was her separate estate, and she denied that same was used for its benefit or improvement. That plaintiff's account represents in fact his dealings with her husband for which she was in no way responsible. That furthermore plaintiff's account was prescribed, and she pleads the prescription of three years as a bar to action thereon under Article 3538 of the Civil Code. Numerous other defenses are urged in her answer, but it is not necessary to state them further.

The plaintiff called Mrs. Comeau for cross-examination. The plaintiff showed by her cross-examination that Gaston Hardy had been overseer for fourteen years on her plantation; that his employment terminated in 1925 and that all her purchases on account for her plantation were settled through him while he was in her employ as overseer. That her overseer had never shown her any statement of account from plaintiff showing payment of her account to him for advances to her plantation;

neither had her husband. That she forbade her overseer to open a plantation account. That she supervised and superintended her plantation through her overseer and not through her husband. That she disposed of her crops through her overseer and had never heard of plaintiff's account against her until last year when Mr. Greig came to her house and told her about it at a time when her husband was very sick and not expected to live. That she refused to look at it or to discuss it with plaintiff on the ground that she had never authorized it and knew nothing about it.

The plaintiff then called Gaston Hardy, her former overseer, as a witness in chief. The witness Hardy in his testimony states that he had been her overseer for fourteen years, his employment terminating in 1925. He was interrogated by plaintiff closely for the purpose of showing that Mr. Comeau had acted as Mrs. Comeau's agent in the management of the plantation, the purchase of plantation supplies, and in selling and disposing of her crops thereon. His testimony reduced to substance and effect, shows that Mr. Comeau was not her agent nor manager, though he often came to the plantation, and that he, the overseer, often sent her messages through her husband and through him received replies.

It cannot be gathered as a result of his testimony that Mr. Comeau was the authorized agent of his wife for the purpose of managing her plantation or for the purpose of buying supplies or selling her crops. It seems that when Mrs. Comeau obtained judgment against her husband about twenty-seven years ago, separating them in property and dissolving the legal community of acquets and gains that had until then existed between them, that she took over the management of her plantation interests herself, hired overseers, attended

to the cultivation and selling and disposing of her crops through her overseer. She did not want her husband to have anything to do with the management of the plantation, but did not want to ignore him altogether. We gather from the evidence on the subject that he had taken it on himself without authority from her to give orders, to which she was opposed. She therefore called in Mr. Hardy, her overseer at the time, and told him he was taking too many orders from her husband and might lose his job as a result of it. Mr. Hardy suggested to her that they have Mr. Comeau sign a written agreement that he had nothing to do with the management of the plantation. The witness Hardy explained that he wanted the agreement, because without it, he might have trouble with Mr. Comeau. Mrs. Comeau told him, so he says, to avoid trouble but to go on and do as he had been doing. It seems that she had told him in the beginning of his employment to take orders only from her. Mr. Hardy told her that he would act as little under Mr. Comeau's orders as possible, and matters went on as before.

The witness testifies that Mrs. Comeau had told him not to buy anything to be charged, but to come to her for what he needed. That she expressly forbade him to buy anything from Mr. Greig or anybody else to be charged to her without her knowledge and consent, and he promised her that he would not, but that he did so nevertheless. The testimony of this witness as to the dealings of himself and Mr. Comeau with Mr. Greig is hard to believe, but it is apparently true.

According to the witness Hardy, Mr. Comeau and himself would each year buy from Mr. Greig various things, such as plantation supplies which Mr. Greig would charge to Mrs. Comeau, but Mr. Hardy and Mr. Comeau kept the fact secret from Mrs. Comeau who had forbade that anything be charged to her. He says that Mr. Comeau did it and told him to do it and to keep the matter secret from Mrs. Comeau. That each year the account fell further and further behind until finally the balance due amounted to some nine hundred and odd dollars, and that Mr. Comeau and the witness Hardy signed a note in settlement of the account. The witness testified that these supplies of food and advances of money were used for the benefit of Mrs. Comeau's plantation. He further testifies that at the end of every year he went to see Mrs. Comeau and went over her plantation affairs with her, but withheld from her all knowledge of their dealings with Mr. Greig, because Mr. Comeau told him not to let her know about that matter. That in the fall of every year Mr. Comeau would, to the knowledge of the witness, detach a part of the cotton and cane on the plantation for Mr. Greig, and that Mr. Greig would apply the amount as credit on the account which he kept against Mrs. Comeau. If there was more than was to be applied to the account, he would draw a check in favor of Mrs. Comeau for the balance, which would be taken to her.

The witness says that he consented to these things because of the insistence of Mr. Comeau. That Mrs. Comeau never came to the plantation but once in fourteen years. That Mr. Comeau would come and give him orders and he found it necessary to take them from him. That on account of the way Mr. Comeau was doing he gave up his position as overseer and withdrew from the place.

The plaintiff followed Mr. Hardy on the stand, and testified to nothing differently, except that he claimed that he was not aware that his dealings with Mr. Comeau and defendant's overseer had been by them

kept secret from Mrs. Comeau. He testified that he had no part in that; that he supposed she knew about the account. But the facts and circumstances indicate that he did his part, in keeping the fact from the knowledge of the defendant.

The evidence shows that the account went on from year to year. An unitemized balance of $2472.69 was brought over from the year 1921; another of $1378.05 from the year 1922; another of $911.20 from the year 1924. This is the balance for which plaintiff took a covering note signed by Mr. Comeau and Mr. Hardy individually. If the plaintiff had supposed that the defendant owed the account, he would have had Mr. Comeau and Mr. Hardy sign it as her agents, or it is more reasonable to believe that he would have preferred to have Mrs. Comeau pay it than to take her husband's and overseer's individual note which he knew to be worthless, without mentioning the transaction to her. The note was never credited against the account which it covers. The plaintiff's explanation is that it was not intended as a settlement of the account, but his witness Hardy says that it was. The plaintiff's further explanation is that he took it as collaterial security and as an acknowledgment on the part of defendant's husband and overseer that she owed it. If that be true, then why did he hold it back and not produce it as such, when he was producing the statement of account which it covered, and which commences with a large balance over from the previous year. The lower court had called on him to itemize this balance, and he brought forward instead a purported acknowledgment of same by Mr. Comeau.

At the time plaintiff took this note he knew that Mr. Comeau and Mr. Hardy had no property and that it could not be paid except by detaching cotton and cane from defendant's plantation, as had been done in the past, which prospect took on a bad appearance when Mr. Hardy ceased to be overseer. And in addition, when Mr. Comeau became sick and was not expected to live, it looks like he then decided to make his claim known to Mrs. Comeau.

Mr. Comeau could have been summoned as a witness and his side of these dealings with Mr. Greig heard, but neither party saw fit to do so.

The statements show on their face and without going back beyond 1921, that plaintiff has received from defendant's crops several thousand dollars' worth of cane and cotton, and according to the evidence it came into his hands without her knowledge and consent. The statement also show important interest charges, but due to the conclusion at which we have arrived, the sum claimed is not important, for the reason that the charges were never authorized by the defendant, and if any part of the advances were in fact used for the benefit of the plantation, the plaintiff has received the value of the advances so used.

Mrs. Comeau testifies that she sent Mr. Greig a written notice several years ago not to sell anything to her husband or Mr. Hardy, to be charged against her. Mr. Greig denies that he received this notice, but his subsequent actions indicate that he must have received such notice, otherwise he would not have taken a note from Mr. Comeau and Mr. Hardy individually, and would not have depended upon Mr. Comeau's acknowledgment, without having anything to say on the subject to Mrs. Comeau.

Mr. Greig testifies that Mrs. Comeau agreed to pay him twelve per cent interest for advances of money and that he knew she would pay him the balance that Mr. Comeau acknowledged, but he didn't need the money and was satisfied with the interest.

Mrs. Comeau denies entering into an agreement of that kind with him, and Mr. Hardy testifies that Mrs. Comeau was always ready and willing to pay cash for her plantation supplies after he took charge as overseer. The evidence also shows that she has for years, personally paid expenses, such as labor, materials to repair tenant dwellings, blacksmith bills, carpenter work and other items too numerous to mention.

The lower court in the concluding part of its opinion says:

"The Court is convinced from all the evidence in this case that the plaintiff was in league with the overseer and the husband, to withhold from Mrs. Comeau the fact that they were making these borrows from the plaintiff, which in the opinion of the Court, went into the pocket of the husband and overseer."

It is not necessary to discuss the case further. We are satisfied that the defendant does not owe the plaintiff, and that his demand was properly rejected.